d. Such other declaratory and further relief as appears reasonable and just; and

e. A jury trial as to each defendant and as to each count.

_____
Derek A. Steenson
Attorney ID No. 310011
1313 Race Street
Philadelphia, Pa. 19107
(215) 253-8658

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kharie Harris, <br><br>**Plaintiff,** <br><br> vs. <br><br> P/O Kearns Badge No. 3555, P/O Bacevich Badge No. 1315, P/O Wills Badge No. 3680, P/O Murphy Badge No. 3539, P/O Kelly, P/O Zgleszewski, Sgt. Mirabella Badge no. 392, P/O Wilson Badge, P/O Brice <br><br>**Defendants.** | CASE NO. <br><br> COMPLAINT |

## I. PRELIMINARY STATEMENT

1. Plaintiff brings this action under 42 U.S.C. §1983 seeking redress for the extraordinary misconduct of Defendants, who committed improper, unlawful, unconstitutional, and excessive acts in subjecting Plaintiff Kharie Harris to violations of his 1st, 4th and 14th Amendment rights to be free from multiple pretextual traffic stops, multiple retaliations for expressions of protected speech, multiple unlawful searches, and multiple unreasonable seizures of his person in a disturbing escalatory chain of events which occurred over three separate pretextual traffic stops between January 7, 2021 and March 23 2021.

## II. JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §1983. Jurisdiction is founded upon 28 U.S.C. §§1331, 1343(a)(4) and the aforementioned statutory provision.

## III. PARTIES

3. Plaintiff is an adult citizen of Philadelphia, Pennsylvania which is located within the Eastern District of Pennsylvania.

4. Defendant P/O Kearns is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state law. He is being sued in his individual capacity.

5. Defendant P/O Bacevich Badge is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state law. He is being sued in his individual capacity.

6. Defendant P/O Wills is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state law. He is being sued in his individual capacity.

7. Defendant P/O Murphy is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state law. He is being sued in his individual capacity.

8. Defendant P/O Kelly is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state law. He is being sued in his individual capacity.

9. Defendant P/O Zgleszewski is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state law. He is being sued in his individual capacity.

10. Defendant , Sgt. Mirabella is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state law. He is being sued in his individual capacity.

11. Defendant , P/O Wilson is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state

law. He is being sued in his individual capacity.

12. Defendant, P/O Brice is, and was at all times relevant to this action, a police officer with the Philadelphia Police Department and acting under color of state law. He is being sued in his individual capacity.

## IV. FACTUAL ALLEGATIONS CONCERNING DEFENDANTS P/O KEARNS, P/O BACEVICH, P/O WILLS, AND P/O MURPHY

13. On or about January 7, 2021, at 9:10pm, Plaintiff, Kharie Harris, was driving his car at Broad Street and Belfield Avenue in Philadelphia, Pennsylvania.

14. Whereupon Defendants P/O Kearns, P/O Bacevich, P/O Wills, and P/O Murphy, who were driving in a heavily tinted unmarked Ford Taurus, pulled Plaintiff over.

15. Plaintiff pulled over and rolled down his driver's side window.

16. One of the Defendants came to the passenger side of Plaintiff's car and yelled at Plaintiff to roll his window down.

17. Plaintiff turned to the passenger side and was blinded and disoriented by a flashlight being shined in his face.

18. At this point Plaintiff, already blinded and disoriented, became confused by multiple defendants yelling at him from different directions, but Plaintiff did make out that police wanted him to turn off his car and unlock his doors.

19. Subsequently Plaintiff, whose driver's side window was already rolled down, turned off his car and unlocked it.

20. As soon as Plaintiff turned off his car the defendants opened both the front driver's side and front passenger side doors and grabbed both of his arms roughly pulling him in opposite directions.

21. As Plaintiff was stretched out, one of the Defendants saw a holster for Plaintiff's firearm.
22. On this date and at this time Plaintiff was in possession of both, a firearm, and a license to carry said firearm.
23. Upon seeing the Plaintiff's holster, one of the Defendants shouted "where's the gun?"
24. Plaintiff responded that he had a license to carry his firearm.
25. All of the Defendants then screamed at him "where's the gun?"
26. Plaintiff told the Defendants that his gun was in his waistband.
27. The Defendants then pulled Plaintiff from his car and handcuffed his hands behind his back while also taking his firearm from his waistband.
28. Plaintiff asked for a supervisor and told the Defendants that he did not consent to any searches of his person or his car.
29. Defendant P/O Kearns then retrieved Plaintiff's driver's license and license to carry a firearm.
30. Defendant P/O Kearns then checked Plaintiff's credentials and determined that both Plaintiff's driver's license and his license to carry a firearm were valid.
31. The Defendants then told Plaintiff that they were keeping his firearm because he didn't follow their commands.
32. Noting to the Defendants that he could not possibly be in their custody unless he had in fact turned off the car and unlocked it as they had screamed at him to do, Plaintiff explained to the Defendants that their reasoning for keeping his firearm was flawed.

33. In direct response to Plaintiff's assertion of his rights and his expression of speech in the form of his recitation of the immediately preceding facts followed by his opinion, Defendant P/O Kearns for the first time, now said that he smelled marijuana in Plaintiff's car.
34. Defendant P/O Kearns then insisted that Plaintiff allow the defendants to search his car, in direct and immediate retaliation against Plaintiff in response to Plaintiff expressing his rights as a free citizen.
35. Plaintiff, who had already told the defendants that he did not consent to any searches of his person or property, repeated his assertions of his rights as a citizen of the Commonwealth of Pennsylvania and the United States of America, to refuse to consent to a search of his personal property by Defendants.
36. Defendants then all threatened to have Plaintiff's car impounded in order to try to get a search warrant.
37. Defendants then continued to threaten Plaintiff with the impoundment of his car if he did not give them consent to search his car.
38. More than thirty minutes elapsed from the time that Defendant P/O Kearns confirmed that Plaintiff's driver's license and license to carry firearms were valid and when Plaintiff finally consented, under duress, in handcuffs, and in direct response to the repeated threats of unlawful impoundment/seizure of Plaintiff's vehicle, to a search of his vehicle.
39. The defendants then all searched Plaintiff's car.
40. Defendant, P/O Kearns found Plaintiff's cousin's gym bag in the back seat area.
41. Inside Plaintiff's cousin's gym bag, Defendant Kearns found Plaintiff's cousin's small

amount of marijuana in a small plastic bag.

42. The defendants then issued Plaintiff a civil ticket for $25.00 for the possession of a small amount of marijuana, kept Plaintiff's firearm, issued no traffic tickets for the initial traffic stop, and then let Plaintiff go.

43. Plaintiff later challenged the civil ticket for his cousin's marijuana in an administrative court and won.

44. Defendants had no lawful reason to pull Plaintiff over in the first place, and were conducting a pretextual traffic stop for the sole purpose of looking for unlawfully possessed guns which Plaintiff did not have and which Defendants had no evidence of.

45. Defendants had no lawful reason to pull Plaintiff out of his car.

46. Defendants had no lawful reason to detain Plaintiff prior to determining that his license to carry a firearm was valid.

47. Defendants had no lawful reason to detain Plaintiff after P/O Kearns determined that Plaintiff's license to carry a firearm was valid.

48. Defendants had no lawful reason to continue the seizure of Plaintiff in handcuffs after this point and did so in direct retaliation for Plaintiff's expression of his reasonable opinions regarding the Defendants' actions.

49. Defendants had no lawful reason to search Plaintiff's car and did so only in direct retaliation in response to Plaintiff's expression of his opinion as to the Defendants' flawed reasoning regarding the seizure of his firearm.

50. The defendants subjected Plaintiff to excessive force when they opened his doors and pulled him in opposite directions by both of his arms instead of simply conducting the traffic stop regarding supposed traffic violations.

## V. FACTUAL ALLEGATIONS REGARDING DEFENDANTS P/O KELLY, P/O ZGLESZEWSKI, AND SGT. MIRABELLA ON JANUARY 26TH, 2021

51. On January 26th, 2021, at 10:00pm, Plaintiff was driving his car on North Broad Street where it intersects with Blavis Street in Philadelphia, Pennsylvania.

52. Defendants Kelly and Zgleszewski pulled Plaintiff over.

53. Plaintiff was in possession of both a license to carry a firearm and a firearm at this time.

54. Defendants Kelly and Zgleszewski could not see Plaintiff's gun at this time.

55. Plaintiff rolled his drivers side window down halfway.

56. Defendants Kelly and Zgleszewski approached Plaintiff's car and immediately asked Plaintiff if he had a gun.

57. Plaintiff responded "Can you conduct your traffic stop?" and "Do you want my information?"

58. In response to Plaintiff's lawful refusal to answer questions which did not pertain to a traffic investigation Defendants Kelly and Zgleszewski then demanded that Plaintiff, who was alone in the car, roll down all of his windows.

59. For a short period of time, Plaintiff pleaded with Defendants Kelly and Zgleszewski to simply conduct the traffic infraction investigation the defendants were pretending to conduct. Realizing that the defendants were not going to do this, Plaintiff then rolled down his other windows in the hopes of avoiding any further escalation by Defendants Kelly and Zgleszewski.

60. Subsequently Defendants Kelly and Zgleszewski, continued interrogating Plaintiff multiple times about whether or not he had a gun.

61. After a few minutes of being badgered by Defendants Kelly and Zglesszewski, who refused to conduct a traffic investigation, and who continued to unlawfully extend the traffic stop by repeatedly asking Plaintiff questions he had no duty to answer, Plaintiff asked for a supervisor.

62. Sgt. Mirabella arrived after a time and began interrogating Plaintiff about guns.

63. Plaintiff pleaded with Defendant Sgt. Mirabella to just conduct the traffic stop and stop asking him irrelevant questions that did not pertain to traffic infractions, but Defendant Sgt. Mirabella persisted.

64. Plaintiff eventually stopped asking Defendant Sgt. Mirabella to cease his unlawful activity when Plaintiff realized his pleas were going nowhere and then refused to reply to any more of Defendant Mirabella's questions.

65. In direct response to and retaliation for Plaintiff's lawful refusal to answer questions not relevant to a supposed traffic infraction investigation, Sgt. Mirabella reached into Plaintiff's car, opened Plaintiff's door, and forced Plaintiff out of his car.

66. Sgt. Mirabella then searched Plaintiff and placed Plaintiff into handcuffs and searched Plaintiff's car.

67. Defendants Kelly and Zgleszewski also searched Plaintiff's car.

68. Defendants Kelly and Zgleszewski then placed Plaintiff into their patrol vehicle and ran Plaintiff's credentials to check if his license to carry a firearm was valid.

69. Defendants Kelly, Zgleszewski, and Mirabella determined that Plaintiff's license to carry firearms was valid, but carted Plaintiff off, in handcuffs and in police custody, to the 39th Police District anyway in clear violation of Plaintiff's right to be

free from unlawful seizures.

70. While Plaintiff was in their custody, Defendants Kelly, Zgleszewski, and Mirabella continued to interrogate Plaintiff.

71. After an hour Defendant Sgt. Mirabella released Plaintiff.

72. As Plaintiff was being released from police custody, Sgt. Mirabella accused Plaintiff of stealing his own lawfully possessed firearm.

73. As Plaintiff was being released from police custody Defendant Sgt. Mirabella also accused Plaintiff of being a drug dealer even though Plaintiff was by himself in his own car which, after being searched by the defendants, turned up no drugs or other indicators of drug dealing activity, and Plaintiff was not being charged with any crimes.

74. After all of this Defendants informed Plaintiff that he had been pulled over for a taillight infraction.

75. Defendants Kelly and Zgleszewski unlawfully pulled Plaintiff over for the express purpose of conducting a pretextual traffic stop for the sole purpose of interrogating Plaintiff about guns, thereby committing an unlawful seizure of Plaintiff.

76. When Plaintiff lawfully refused to answer those questions Defendants Kelly and Zgleszewski unlawfully extended the pretextual traffic stop of Plaintiff for the sole purpose of continuing the interrogation of Plaintiff about guns, in direct retaliation for Plaintiff's lawful refusal to answer questions about guns, thereby committing a further unlawful seizure of Plaintiff.

77. When Defendant Sgt. Mirabella arrived he also unlawfully extended the traffic

stop of Plaintiff for the sole purpose of interrogating Plaintiff about guns, thereby committing an unlawful seizure of Plaintiff, who had supposedly been pulled over for a taillight infraction.

78. In direct retaliation for Plaintiff's refusal to answer questions and for his assertion of his rights, Sgt. Mirabella pulled Plaintiff out of his car, handcuffed him, searched him, and searched his car.

79. In direct retaliation for Plaintiff's express statement that he refused to and did not have to answer questions, Defendant Sgt. Mirabella unlawfully extended Plaintiff's seizure into an arrest of Plaintiff and transport of Plaintiff to the police station, all the while in handcuffs.

80. Defendant Sgt. Mirabella had confirmed that Plaintiff's license to carry firearms was valid while all parties were on Broad and Blavis, and yet, Defendant Sgt. Mirabella, knowing he did not have probable cause to seize Plaintiff, unlawfully did so and did so in retaliation for Plaintiff's constitutionally protected insistence that he had a right to refuse to answer the repeated questions posed to him during a supposed traffic stop for a taillight.

### VI. FACTS RELATED TO DEFENDANTS P/O WILSON, P/O BRICE, AND SGT. MIRABELLA ON MARCH 23, 2021

81. On March 23, 2021 at 10:00pm Plaintiff was driving his car on the 4300 Block of of Germantown Avenue when he was pulled over by Defendants P/O Wilson and P/O Brice.

82. Plaintiff was alone in his car.

83. Plaintiff was not in possession of a firearm on this day.

84. Plaintiff rolled down his window.

85. Defendant P/O Brice then told Plaintiff to roll down his other windows.

86. Defendant rolled down his rear driver's side window too so that Defendant P/O Brice could see into both the front seat and back seat areas of his car and see that Plaintiff was alone in the car.

87. P/O Brice, not satisfied with this, insisted that Plaintiff roll down his passenger side windows as well, even though P/O Brice could see into Plaintiff's car from both open windows on the driver's side of the car where he was standing.

88. Defendants Wilson and Brice were shining flashlights into the interior of Plaintiff's car and scanning the interior of Plaintiff's car while Defendant Brice was ordering Plaintiff to roll down his passenger side windows.

89. Plaintiff, realizing that this was another pretextual traffic stop, told Defendant Brice that he could obviously see that Plaintiff was the only person in the car and that Defendant Brice could clearly see into the passenger area of the car since Plaintiff rolled down both windows on his driver's side.

90. Defendants P/O Brice and P/O Wilson then responded by repeating P/O Brice's commands to roll down the windows on the passenger side.

91. Defendants P/O Brice and P/O Wilson had pulled Plaintiff over supposedly for a traffic violation.

92. Yet Defendants P/O Brice and P/O Wilson did not conduct a traffic stop and investigation regarding traffic violations.

93. Instead said Defendants unlawfully extended the traffic stop by ordering Plaintiff to roll down more of his windows so that Defendants could continue to scan the inside of Plaintiff's car while looking for and asking about guns.

94. Plaintiff, fearing further escalation due to Defendants Wilson and Brice refusing to conduct the traffic infraction investigation that had supposedly been the reason for the traffic stop, asked for a supervisor.

95. A supervisor was called and then P/O Wilson approached Plaintiff and shined a flashlight in Plaintiff's eyes while finally requesting Plaintiff's drivers license and registration and insurance documents.

96. Plaintiff handed said items to P/O Wilson.

97. Defendants Brice and Wilson repeatedly asked Plaintiff questions, but since those questions were not about the traffic stop, but only about guns and other subjects not relevant to traffic infractions, Plaintiff refused to answer them.

98. After forty minutes Sgt. Mirabella arrived.

99. Fearful of Sgt. Mirabella due to the previous interaction with him in January, Plaintiff placed both of his hands out of his window and kept them there to show Sgt. Mirabella that he did not have anything in his hands.

100. Sgt. Mirabella, in direct retaliation for Plaintiff's prior lawful refusal in January to answer questions irrelevant to traffic investigations, and Plaintiff's lawful and reasonable opinion that the police were not entitled to answers to irrelevant questions, told Plaintiff to roll down all of his windows or he would break them.

101. Plaintiff, fearing what Sgt. Mirabella might due if he moved, stayed still.

102. Sgt. Mirabella then grabbed Plaintiff's hands and bent his fingers back and twisted them causing Plaintiff immediate pain and injury.

103. In spite of this unprovoked physical assault on Plaintiff, Plaintiff did not resist.

104. Defendants grabbed Plaintiff and hand cuffed his hands which were still extended

out of his window.

105. Sgt. Mirabella then ordered Plaintiff out of the car.

106. Plaintiff complied, and once outside the car Sgt. Mirabella roughly searched Plaintiff.

107. Nothing was taken from Plaintiff's person during that search because Plaintiff did not have anything on him to take.

108. During this unlawful search, Sgt. Mirabella forcefully grabbed Plaintiff's testicles and penis and squeezed them.

109. Plaintiff asked why he was being assaulted in that manner.

110. In response to Plaintiff's verbal protest to being assaulted, Defendant Sgt. Mirabella slammed Plaintiff against his own car.

111. Defendants then placed Plaintiff in the back of a police vehicle while conducting an illegal search of Plaintiff's car.

112. The illegal search of Plaintiff's car turned up no contraband.

113. Plaintiff was then let out of the police vehicle.

114. Plaintiff then saw Defendant P/O Brice using his cell phone to take a photograph of Plaintiff's driver's license.

115. Plaintiff asked why that was being done, and in response Defendant Sgt. Mirabella told Plaintiff to get back in his car or he would be arrested for disorderly conduct.

116. Plaintiff got in his car and was issued five traffic tickets before finally being let go.

## VII. FEDERAL CIVIL RIGHTS VIOLATIONS

117. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein.

### VII.A FEDERAL CIVIL RIGHTS VIOLATIONS CONCERNING DEFENDANTS P/O KEARNS, P/O BACEVICH, P/O WILLS, AND P/O MURPHY

118. As a direct and proximate result of the conduct of the defendants, committed under color of state law, Defendants deprived Plaintiff of his right to be free from unreasonable seizures, unlawful searches, excessive force, and retaliation. As a direct and proximate result of the conduct of Defendants, Plaintiff suffered and continues to suffer harm, including personal humiliation, mental anguish and suffering, distress, and personal indignity, in violation of his rights under the laws and Constitution of the United States, in particular the First, Fourth and Fourteenth Amendments thereof, and 42 U.S.C. §1983.

### VII.B FEDERAL CIVIL RIGHTS VIOLATIONS CONCERNING DEFENDANTS P/O KELLY, P/O ZGLESZEWSKI, AND SGT. MIRABELLA ON JANUARY 26TH, 2021

119. As a direct and proximate result of the conduct of Defendants Kelly, Zgleszewski, and Sgt. Mirabella committed under color of state law, Defendants deprived Plaintiff of his right to be free from unreasonable seizures, unlawful searches, and retaliation. As a direct and proximate result of the conduct of Defendants, Plaintiff suffered and continues to suffer harm, including personal humiliation, mental anguish and suffering, distress, and personal indignity, in violation of his rights under the laws and Constitution of the United States, in particular the First, Fourth, and Fourteenth Amendments thereof, and 42 U.S.C. §1983.

**VII.C FEDERAL CIVIL RIGHTS VIOLATIONS CONCERNING DEFENDANTS P/O WILSON, P/O BRICE, AND SGT. MIRABELLA ON MARCH 23, 2021**

120. As a direct and proximate result of the acts and omissions of Defendant P/O Wilson and Defendant, P/O Brice, committed under color of state law, Defendants deprived Plaintiff of his right to be free from unreasonable seizures and unlawful searches. As a direct and proximate result of the conduct of Defendants, Plaintiff suffered and continues to suffer harm, in violation of his rights under the laws and Constitution of the United States, in particular the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. §1983.

121. As a direct and proximate result of the acts and omissions of Defendant, Sgt. Mirabella, committed under color of state law, Defendant deprived Plaintiff of his right to be free from unreasonable seizures, unlawful searches, excessive force, and retaliation. As a direct and proximate result of the conduct of Defendants, Plaintiff suffered and continues to suffer harm, in violation of his rights under the laws and Constitution of the United States, in particular the First, Fourth and Fourteenth Amendments thereof, and 42 U.S.C. §1983.

122. Plaintiff suffered and continues to suffer personal humiliation, mental anguish and suffering, distress, personal indignity, and injuries to his fingers and hands.

**WHEREFORE, the Plaintiff requests the following relief:**

   a. Compensatory damages as to all defendants;

   b. Punitive damages as to the individual defendants;

   c. Reasonable attorney's fees and costs as to all defendants;